IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. THOMAS CRELLY, Individually, and <br><br> 2. THOMAS CRELLY, as Personal Representative of the Estate of KATHLEEN CRELLY, Deceased, <br><br>    Plaintiffs, <br><br> v. <br><br> 1. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; and <br><br> 2. PROPERTY AND CASUALTY INSURANCE COMPANY OF HARTFORD, <br><br>    Defendants. | Case Number CIV-21-588-J |

**DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant State Farm Mutual Automobile Insurance Company ("Defendant") moves for summary judgment under Fed. R. Civ. P. 56, because there is no genuine dispute of material fact that Plaintiffs are not entitled to relief of judgment against Defendant as a matter of law because Plaintiffs did not have an underinsured insurance policy from Defendant at the time of the accident.

**STATEMENT OF MATERIAL FACTS[1]**

1. Thomas Crelly and Kathleen Crelly were involved in a car wreck on November 23, 2018, in Major County, Oklahoma. ("the wreck"). At the time of the wreck, Thomas Crelly was operating a 2014 Dodge Ram 2500 ("the vehicle") and towing a 2015 Keystone RV Cougar Fifth Wheel ("the trailer"). Kathleen Crelly was riding as a passenger in the vehicle.

---

[1] *See* Exhibit 1, Joint Stipulation of Facts

2. Thomas Crelly and Kathleen Crelly were residents of Missouri at the time of the accident.

3. Kathleen Crelly was killed in the wreck.

4. Thomas Crelly was injured in the wreck.

5. Thomas Crelly was the owner of the 2014 Dodge Ram 2500 he was operating at the time of the wreck.

6. The 2014 Dodge Ram 2500 was primarily garaged at the Crelly residence in Missouri.

7. Thomas Crelly insured the vehicle with State Farm Automobile Mutual Insurance Company under a Missouri policy no. 436 3475-C23-25. ("The State Farm policy.").

8. The State Farm policy provided a stated uninsured motorist limit of $100,000, medical payments limit of $1,000, and a death and dismemberment limit of $5,000.

9. The Crellys chose not to purchase underinsured motorist coverage at the time they purchased the policy.

10. The State Farm policy was in force at the time of the wreck.

11. The State Farm policy was issued in Missouri.

12. The State Farm policy has a provision (Policy Form 9825A, Page 9 of 32)

which provides:

**Required Out-of-State Liability Coverage**

If:

1. an insured is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and
2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident, then this policy will be interpreted to provide the minimum liability coverage required by such law.

13. State Farm denied coverage on the basis that although he had uninsured motorist coverage on the vehicle, he did not purchase underinsured motorist coverage on the vehicle.

14. The State Farm policy has a provision (Policy Form 9825A, Page 13 of 32) which provides:

**Uninsured Motor Vehicle** means a land motor vehicle:

1. The ownership, maintenance and use is:
   A.  Not insured or bonded for bodily injury liability at the time of the accident; or
   B.  Insured or bonded for bodily injury liability at the time of the accident; but
   (1)  the limits are less than required by the financial responsibility act of Missouri; or
   (2)  the insuring company:
   (a)  denies that its policy provides liability coverage for compensatory damages that result from the accident; or
   (b)  is or becomes insolvent; or
   3) the owner and driver of which remain unknown and which causes bodily injury to the insured.

**Uninsured Motor Vehicle** does not include a land motor vehicle:

1.  Whose ownership, maintenance or use is provided Liability Coverage by this policy.

15.  The State Farm policy has a provision (Policy Form 9825A, Page 15 of 32) which provides:

**Underinsured Motor Vehicle** means a land motor vehicle:

1. The ownership, maintenance and use of which is either:
A.  Insured or bonded for bodily injury liability at the time of the accident; or;
B.  Self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and
2.  For which the total limits of insurance, bonds and self insurance for bodily injury liability from all sources;
A.  Are less than the amount of the insured's damages; or
B.  Have been reduced by payments to persons other than the insured to less than the amount of insureds damages.

**Underinsured Motor Vehicle** does not include a land motor vehicle:

1. Whose ownership, maintenance or use is provided Liability Coverage by this policy.

## ARGUMENT AND ANALYSIS

**I.   STANDARD FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In diversity cases such as this, "the substantive law of the forum state governs the analysis of the underlying claims…." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2008) (citation omitted).

Under this standard, the moving party must first carry the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. at 325. "The moving party may satisfy its initial burden of demonstrating a lack of a genuine issue of material fact by showing "an absence of evidence to support the nonmoving party's case. If the moving party succeeds, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Platt v. Winnebago Indus.*, 960 F.3d 1264, 1269 (10th Cir. 2020) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) and *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013)).

**II.   PLAINTIFFS USE OF *LERITZ* CASE DOES NOT APPLY TO THIS CASE**

Plaintiffs reference a case in their Complaint that they allege states that the out of state insurance policy provision in Plaintiffs' insurance policy would interpret the uninsured/underinsured motorist coverage to be interpreted by Oklahoma Law. *See* Exhibit 2,

Plaintiffs Complaint. The case mentioned was *Leritz v. Farmers Ins. Co*. In *Leritz v. Farmers Ins. Co.*, Plaintiff was injured in a motorcycle accident in Oklahoma. 2016 OK 79, ¶ 1, 385 P.3d 991, 992. "Plaintiff brought this action alleging that he had incurred medical expenses and suffered damages exceeding Yates's liability coverage." *Id*. The question was whether Plaintiff could stack his uninsured motorist (UM) coverage based on his ownership of policies on each of his three vehicles. *Id*. At the time, Kansas did not allow stacking and Oklahoma did allow stacking. *Id*. "The trial court granted summary judgment to the insurer and the Court of Civil Appeals affirmed, applying the insurer's proposed solution to a perceived conflict of laws issue." The Supreme Court disagreed saying there was no choice of laws issue in this case because the policy specifies which law will apply to an issue of stacking policies. *Id*.

What was most important to the Court was the fact that the policy addressed stacking. *Id*. "Subject to the law of the state of occurrence, we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the occurrence." *Id*. "Thus, the policy limits stacking, but only if the law of the state of occurrence limits stacking." *Id*. "Oklahoma law did not limit stacking." *Id*. "Therefore, under the policy's choice to defer to the law of the state of occurrence regarding stacking, the policy holder was entitled to stack UM coverage." *Id*.

The definitions of uninsured motorist and underinsured motorist in Plaintiffs policy clearly defines what is underinsured and uninsured motorist, which is different from the Oklahoma definition of uninsured. *See* Statement of Material Facts ¶ 14-15 and 36 O.S. § 3636. There are also no provisions within the policy that state the definition of uninsured and underinsured would change depending on which state the accident occurs. *See* Exhibit

3, State Farm Insurance Policy.

Therefore, *Leritz* doesn't apply to the facts of this case because the Plaintiffs' State Farm insurance policy does not change its definition of uninsured and underinsured to the state where the accident occurs.

### III.   OKLAHOMA VERSUS MISSOURI LAW

The question is what law would apply to this case, Oklahoma or Missouri law, for the interpretation of the auto insurance policy sold to the Plaintiffs? As explained below, Missouri law should govern this contract and its interpretation.

A court sitting in diversity jurisdiction applies the substantive law of Oklahoma as the forum state. *Nat'l Cas. Co. v. W. Express*, 356 F. Supp. 3d 1288, 1294 (W.D. Okla. 2018) (citing *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1277 (10th Cir. 2011)). This includes Oklahoma's choice of law principles. *Id.* (citing *Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999)).

"This state's established general choice-of-law rule for contract actions is bottomed on the terms of 15 O.S. § 162." *Bernal v. Charter Cnty. Mut. Ins. Co.*, 2009 OK 28, ¶ 12, 209 P.3d 309, 315. "According to its provisions, the rule of *lex loci solutionis*—the law where the relevant contract performance occurs—is to be applied." *Id.* "When there is no indication in the contract's text where performance is to occur, the lex loci contractus rule—the law of the place where the contract is made—will govern." *Id.* "In *Bohannan*, the court, persuaded by the need for flexibility and analysis of competing state interests in controversies, carved an exception to application of the *lex loci contractus* rule for choice-of-law questions in motor vehicle insurance cases that deal with conflicting state laws." *Id.* "In those instances, the traditional lex loci contractus rule governs the validity, interpretation, application and effect of the motor vehicle insurance contracts except

where (1) the provisions would violate Oklahoma public policy or (2) the facts demonstrate another jurisdiction has the most significant relationship to the subject matter and the parties." *Id*.

In *Herren*, Herren was an insured under a motorist policy issued to her by American Family and four Farm Bureau policies issued to her husband. *Herren v. Farm Bureau Mut. Ins. Co., Inc.*, 2001 OK CIV APP 82, ¶ 2, 26 P.3d 120, 121. The American policy was issued in Missouri and the Farm Bureau policies were issued in Kansas. *Id*. at ¶ 3. "Before any of the policies were due for renewal, the Herrens moved to Oklahoma and the accident occurred." *Id*. "Both insurance companies, applying the law of the respective states in which the policies were written, denied Herrens' claims." *Id*. "Under the terms of American Family's Missouri policy, uninsured motorist coverage is available only if the third party tortfeasor has no liability coverage, or liability coverage with limits less than the minimum required by the financial responsibility laws of the state in which the vehicle is garaged." *Id*. at ¶ 4. "The Farm Bureau Kansas policies provide underinsured coverage, but only where the third party's liability coverage is less than the uninsured coverage of the policy." When denied, the Herrens initiated the lawsuit seeking recovery under the uninsured/underinsured coverage. *Id*. at ¶ 6.

On a motion for summary judgment by both Plaintiffs and Defendants, the trial court ruled in favor of the Defendants. *Id*. at ¶ 9. "The trial court found that under *Bohannan v. Allstate Ins. Co., 1991 OK 64, 820 P.2d 787*, the laws of the state in which the insurance policies were sold should govern, and consequently, no uninsured/underinsured coverage was available." *Id*.

Herrens argued that granting summary judgment to Defendants was in error because the trial court failed to apply the exceptions to the *lex loci contractus* rule apply in this case. *Id*. at ¶ 11. The Court explained that the exceptions to lex loci contractus rule as found in Bohannan is the consideration of public policy of the forum state and interests of the conflicting states. *Id*. at ¶ 14.

In *Bohannon*, the court looked to Oklahoma public policy regarding uninsured motorist coverage as set out in 36 O.S.1981 § 3636. *Id*. "Under California uninsured motorist law, insurers were allowed to reduce benefits for other specified benefits paid, and stacking of uninsured motorist benefits was prohibited." *Id*. at ¶ 15. "Oklahoma law did not allow set offs against uninsured motorist coverage and did allow stacking." *Id*. "Because Bohannan, the California passenger, was an insured under the Oklahoma driver's policy, the Court found to apply California law allowing a set off against uninsured motorist coverage would deprive an injured party the benefit of the Oklahoma uninsured motorist coverage and thus violate Oklahoma public policy as expressed in § 3636."

"The *Bohannan* Court noted it would have found a California provision prohibiting stacking Oklahoma uninsured motorist coverage with California uninsured motorist coverage equally offensive to Oklahoma public policy as expressed in § 3636." *Id*. at ¶ 16. "On the other hand, the Court found reduction of the California uninsured motorist coverage by the amount of Oklahoma liability coverage would not offend Oklahoma public policy because the Oklahoma statutory mandate for minimum liability coverage did not bar set off." *Id*. at ¶ 16. "The *Bohannan* Court further observed the § 3636 bar against set off against liability benefits is a limitation on **insurance contracts issued in this state**." *Id*. (emphasis added).

The insurance policies in the Herren case were not issued in Oklahoma. *Id*. at ¶ 17. "Because Joyce Herren was not an insured under any Oklahoma uninsured motorist coverage, application of the Kansas and Missouri provisions **barring uninsured motorist coverage could not affect Oklahoma uninsured motorist coverage** as it did in *Bohannan*." *Id*. (emphasis added).

The Court stated further that "[a] conflict with Oklahoma law is not equivalent to a violation of Oklahoma public policy." *Id*. at ¶ 18 (citing *Roby v. Bailey*, 1993 OK CIV APP 93,

Page **8** of **14**

856 P.2d 1013). In *Roby*, the Court of Civil Appeals concluded that under *Bohannan* the public policy exception may be invoked only where the other state's laws [1] violated a clearly expressed public policy intended to apply to insurance policies effective in Oklahoma, or [2] would effectively deprive the insured of benefits bargained for under an Oklahoma insurance policy." *Id*. (internal quotations omitted).

The Court stated that the facts in Herren were more aligned with the facts in *Roby* than in *Bohannon*. *Id*. at ¶ 19. "There, an Oklahoma resident who was insured under a Texas policy, was killed in a vehicle accident in Oklahoma." *Id*. The Texas insurer, applying Texas law prohibiting stacking, disputed the right to stack the uninsured motorist coverage for the three vehicles covered by the policy and the court agreed in that case. *Id*.

"The *Bohannan* Court spoke approvingly of the Circuit Court of Appeals decision in *Rhody*." *Id*. at ¶ 20. "The Court reasoned the insurance contracts were purchased in Texas, presumably at the rates set in accordance with Texas law, and application of Texas law did not deny uninsured motorist benefits contracted for and paid pursuant to Oklahoma law." *Id*. The Court in *Herrens* believed the same reasoning applied in this case. *Id*.

The Herrens also asserted that a significant relationship test requires application of Oklahoma law since the vehicles were garaged in Oklahoma and they were Oklahoma residents. *Id*. at ¶ 21. "The Supreme Court rejected a similar argument in *Bohannan*." *Id*. "There it was argued the choice of law rules, as set forth in The Restatement (Second) Conflicts of Laws, gave greatest weight to location of the insured risk." *Id*. "In vehicle insurance, that is the place where the insured vehicle will be garaged most of the insured period. The Supreme Court noted:

> In first-party UM [uninsured motorist] coverage, location of the insured automobile does not attain greatest significance. The place of performance and the

place of contracting are of greatest significance in this contract area pervaded by state statutes." *Id*.

The Court found in favor of the Defendants because "Missouri and Kansas insurers issued policies to residents of their respective states, with the vehicles being garaged at the time of policy issuance in those states." *Id*. at ¶ 22. "Application of Missouri and Kansas law will not deprive Herrens of any insurance benefits contracted for and paid for pursuant to Oklahoma law." *Id*.

As explained in *Herren*, the *Bohannan* Court stated that the Oklahoma choice of law rules give greatest weight to the location of the insured risk. In vehicle insurance that place is where the insured vehicle will be garaged for most of the insured policy period. In our case here, we have the Plaintiffs being Missouri residents that have a Missouri insurance policy for a vehicle primarily garaged in Missouri. Application of Missouri law will not deprive the Plaintiffs any insurance benefits contracted for and paid for pursuant to Oklahoma law.

Plaintiffs will likely try to argue that a significant relationship with one of the Plaintiffs and Oklahoma should have Oklahoma law apply to this case because one of the Plaintiffs lived in Oklahoma after the accident. *See* Exhibit 2. In *Herren*, the plaintiffs tried to make the same argument and the Court disagreed with the significant relationship tests application in that case. At least in that case, they moved to Oklahoma **before the accident**. Here Plaintiffs are alleging the moving to Oklahoma **after the accident** should entitle them to having their policy interpreted under Oklahoma law. If the court wouldn't let the Herrens' claim a significant relationship to Oklahoma and they lived in Oklahoma before the accident, the court would definitely not say Plaintiffs had a significant relationship to Oklahoma in this case for someone who moved to Oklahoma after the accident.

Therefore, the law of Missouri should apply to this motor vehicle insurance policy.

IV. **APPLICATION OF MISSOURI LAW TO UNINSURANCE/UNDERINSURANCE POLICIES**

Missouri law does not require underinsurance motor vehicle insurance policies. Nor does its uninsurance motor vehicle insurance policies allow recovery under Missouri law unless where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified herein because of insolvency. Mo. Rev. Stat. § 379.203. Defendant is not alleged to be insolvent nor is Defendant insolvent. Therefore, the Plaintiffs cannot recover from Defendant under the uninsurance policy.

V. **OKLAHOMA LAW WOULD ALSO PREVENT RECOVERY FROM UNINSURANCE POLICY IN THIS CASE**

Plaintiffs are trying to use Oklahoma uninsurance coverage laws to say they are entitled to coverage because they did not purchase underinsurance coverage. From Plaintiffs allegation on paragraph 6 of their Complaint, Plaintiffs allege that their uninsured policy should cover them because Oklahoma law requires that they be covered under their uninsured policy. 36 O.S. § 36-3636 states "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state **with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.**" 36 O.S. § 3636 (A) (emphasis added). Subsection B states policies referred to in Section A "shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the

amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7-204 of Title 47 of the Oklahoma Statutes..." 36 O.S. § 3636. The statute further defines uninsured motor vehicle as "[f]or the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other." 36 O.S. § 3636 (C).

47 O.S. § 7-324 states that insurance policy in the state must have the minimum of Twenty-five Thousand Dollars ($25,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, Fifty Thousand Dollars ($50,000.00) because of bodily injury to or death of two or more persons in any one accident, and Twenty-five Thousand Dollars ($25,000.00) because of injury to or destruction of property of others in any one accident. 47 O.S. § 7-324.

The definition of uninsured motorist described in 36 O.S. § 3636 (C) would not apply because this applies to insurance policies with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section. Subsection B describes the minimums required in 47 O.S. § 7-324. As described about 47 O.S. § 7-324 states that all insurance policies must have $25,000 for bodily injury to or death for any one individual in an accident; $50,000 for bodily injury to or death of two or more individuals in an accident; and $25,000 for property damage caused to other vehicles or property in an accident. What is not in subsection B is the definition of uninsured motorist described in subsection C.

Therefore, even if we were to interpret the uninsured policy using Oklahoma law, underinsured drivers would not be covered under the policy, so Plaintiffs could not recover from

the uninsurance policy.

## CONCLUSION

No matter what state law the Court applies in this case, Plaintiffs cannot recover from Defendant under Plaintiffs uninsurance policy because the policy clearly defines underinsured motorists as not being uninsured motorists, the law of the State of Missouri would apply in the interpretation of uninsured motorist and it does not apply to underinsured motorists, and finally even with the policy being interpreted under Oklahoma law, Plaintiffs cannot recover under their uninsurance policy because 36 O.S. § 3636 states that the definition of uninsured motorist only applies to insurance policies with respect to a motor vehicle registered or principally garaged in this state.

Therefore, Plaintiffs are not entitled to relief as a matter of law and Defendant respectfully moves the Court for summary judgment barring all claims of relief for the Plaintiffs from the Defendant.

s/Bill Molinsky
**BILL MOLINSKY, OBA #12791**
Lytle Soulé & Felty P.C.
119 N. Robinson, Suite 1200
Oklahoma City, OK 73102
Tel: (405) 235-7471
Fax: (405) 232-3852
email: molinsky@lytlesoule.com

*Attorney for Defendant State Farm Mutual Automobile Insurance Company*

## CERTIFICATE OF SERVICE

This is to certify that on the 31st day of January, 2023, I electronically transmitted the foregoing document to the Clerk of the Court of the Western District using the ECF System for filing and transmittal of Notice of Electronic filing which will be transmitted to the following:

Rex Travis
Casey Lawson
Travis Law Office
12220 N. MacArthur Blvd., Suite F #200
Oklahoma City, OK 73162-1851
info@travislawoffice.com
mailto:ronw@tmoklaw.com
mailto:jerryn@tmoklaw.com
*Attorneys for Plaintiff*

Marcus Mears
Marcus@cminjurylaw.com
*Attorneys for Plaintiff*

Julia A. Palmer
Anna Wolfe
McAFEE & TAFT A PROFESSIONAL CORPORATION
2 West 2nd St., Ste. 1100
Tulsa, OK 74103
(918) 587-0000
julia.palmer@mcafeetaft.com
anna.wolfe@mcafeetaft.com
*Attorneys for Defendant Property & Casualty Insurance Company of Hartford*

                                                    s/ BILL MOINSKY
                                                    BILL MOLINSKY